Vincent Moroni, Plaintiff-Appellant, v. Gulf, Mobile and
Ohio Railroad Company, a Corporation, Defendant-
Appellee.

Gen. No. 50,369.

First District, Third Division.

September 14, 1967.

James A. Dooley, of Chicago, for appellant.

Winston, Strawn, Smith & Patterson, of Chicago (Edward J. Wendrow and Richard J. Brennan, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal from an order granting defendant, Gulf, Mobile and Ohio Railroad Company's motion for summary judgment.

The original complaint in this action was against Intrusion-Prepakt, Incorporated, and Gulf, Mobile and Ohio Railroad Company, hereinafter called G. M. & O. A motion to dismiss was filed by Intrusion on the ground that the Workmen's Compensation Act precluded plaintiff's recovery against Intrusion. See Moroni v. Intrusion-Prepakt, Inc., 24 Ill App2d 534, 165 NE2d 346, wherein the appellate court reversed the dismissal by the trial court.

The matter before us involves the count against defendant G. M. & O. to recover damages for personal injuries sustained by the plaintiff when a board on a scaffold on which he was standing became loose and caused him to be thrown to the ground. Intrusion-Prepakt, Incorporated, erected a scaffold to enable plaintiff, who was an employee of Intrusion-Prepakt, Incorporated, to perform certain construction work on a viaduct owned

427

by the defendant, G. M. & O. A jury trial was demanded by defendant. The court on motion of defendant G. M. & O. granted summary judgment. The amended complaint charged G. M. & O. with violating the Illinois Structural Work Act, as a result of which the plaintiff was injured. The defendant G. M. & O. admitted ownership, maintenance, operation and control of the viaduct on which the plaintiff was working, but denied guilt under the Illinois Structural Work Act. A counterclaim was filed by G. M. & O. against Intrusion-Prepakt alleging that Intrusion was liable to G. M. & O. for any sums awarded to the plaintiff by reason of this action. A motion for summary judgment against the plaintiff was filed by G. M. & O. in which it stated that there was no genuine issue as to any material fact, and that it was entitled to a judgment as a matter of law. As heretofore noted, this motion was granted.

The plaintiff in this court raises two points: (1) a trial court must deny a motion for summary judgment when it appears that there is a triable issue of fact present and such a motion cannot be employed to impair the right of trial by jury, and (2) the record showed defendant had the right to control the work; this fact in itself made a triable issue of fact.

The defendant, G. M. & O., had entered into a contract with Intrusion-Prepakt, Incorporated, which provided, among other things, the following:

"The Contractor proposes: . . .

"5. To comply at all times with any instructions given by the designated representative of the Owner, provided that the Contractor shall retain full control of his special materials and processes."

Paragraph 2 of the contract provided in part as follows:

"The Contractor proposes: . . .

"2. To supply the fine and coarse aggregates and to supply all other materials and supplies, other than furnished by the Owner, necessary to carry out the work; provided that, if requested by the Owner, the Contractor first shall obtain approval of any purchase. . . ."

The contract also provided the following:

"This proposal is submitted with the understanding that the Owner will agree:

"1. . . . To furnish the Contractor with bi-monthly statements of costs of materials supplied by the Owner, for the purpose of computing the total cost of the work and the contract fee."

The work generally was that of repairing structures which were then in existence and making some additional reinforcements with concrete between the beams and girders, and was being performed from the underside of the viaduct. Plaintiff, who was standing on the scaffold, was thrown therefrom onto the ground below when a board on the scaffold came loose.

In support of its motion for summary judgment G. M. & O. filed the affidavits of L. F. Rapier, a bridge and building supervisor for G. M. & O., and Victor E. Erickson, who was at the time of the accident the field superintendent for Intrusion on the construction work involved.

Rapier set forth in his affidavit that he was aware of the contract under which Intrusion was to do certain repair work to the G. M. & O. Bridge. He stated no G. M. & O. employees ever worked at the Osgood Street Project or assisted the Intrusion employees in any way, but that G. M. & O. purchased some cement and sold it

429

to Intrusion for use on the job. Rapier had no supervision over the work being done and never made any suggestions or gave any instructions to any Intrusion employees or supervisors. He further stated that he would go by the job to see how the work was coming along and to see whether it appeared to conform to the specifications in the contract. He did this about two or three times a month and would sometimes stop and greet Erickson, an Intrusion employee. He would ask Erickson how the work was coming along and then go elsewhere where he did have charge of the work. Once or twice during the months of the project he called his superiors in Mobile to tell them how much of the job was completed. When the job was finished he went to the project site to satisfy himself that the area had been cleaned up and that the contract specifications had been met and reported orally to his superiors. He further stated that he had never inspected any scaffolding.

Erickson in his affidavit stated that he was the field superintendent on the project and that he supervised whatever work was done. He also stated that all the men who did the work were employees of Intrusion and took orders from him or his foremen, Delbert Yallaly and Mr. Pekula. He stated he had entire supervision of the work and no G. M. & O. employee ever volunteered any suggestions or gave any orders or instructions to him or his men, and that he never asked any of the G. M. & O. people for any safety suggestions or to make any inspection of the project. He knew Rapier, who would stop by to say hello and leave in a short time. Rapier never spoke to him about the method or manner of doing the work and never gave him any orders about the work or discussed the details of the contract. Rapier did not inspect the scaffolding or other equipment.

Plaintiff filed a counteraffidavit which stated that the deposition of Erickson had been taken under section

430

60 of the Civil Practice Act. The deposition was attached to the counteraffidavit filed with the court.

■ ■ Although defendant questions the propriety of plaintiff's deposing of Erickson under section 60 as a hostile witness (since Erickson left the employ of Intrusion-Prepakt in 1960 and the deposition was taken in 1963), this argument is not meritorious. The court in Campione v. Henry C. Lytton & Co., 57 Ill App2d 147, 206 NE2d 780, held that where no objection is made to the character of the affidavits in the summary judgment proceeding, the point may not be raised for the first time on appeal.

Plaintiff's counteraffidavit set forth that Erickson had signed a statement in direct contradiction of his deposition and his affidavit in support of G. M. & O.'s motion for summary judgment. The statement of Erickson was attached to the counteraffidavit and was introduced as plaintiff's Exhibit 1 at the taking of the deposition. Erickson in his statement said that Rapier or his master carpenter would make frequent visits to look the job over as it progressed, and that it was not uncommon for Rapier to make suggestions for the improvement of equipment insofar as safety was concerned. He further stated that Rapier was very conscientious and interested in seeing that the work was being done in the manner that the contract called for, and it was common practice on Rapier's part to watch the laborers perform their jobs and see that things were going well and "he would not hesitate to call my attention to possible improvements or changes through the entire 5 or 6 months that it took to complete the work."

Prior to the final ruling granting defendant's motion for summary judgment, the motion judge considered the transcript of testimony of Delbert Yallaly, a foreman of Intrusion on this project. That testimony was taken before a trial judge and a jury in a trial of this case which was ended by the judge declaring a mistrial. That tran-

431

script was filed with the proceeding by the order of the motion judge. Yallaly's testimony revealed that Rapier would come on the job once or twice a week from the first week the job started. Rapier and Erickson would look the job over and when Rapier left Erickson would tell Yallaly that "we have to do a little more work here." He stated he would see Rapier walk around and point at different things and Rapier at times would stay maybe an hour or so. Rapier would approve parts, and sometimes he would wait for Rapier to come before putting some men on some work.

The defendant in its brief argued that the contract between G. M. & O. and Intrusion-Prepakt, which the plaintiff so strongly relied upon, was not called to the trial court's attention. The contract is a part of the record before this court. It was attached to verified answers to interrogatories filed by Intrusion-Prepakt, the third party defendant to defendant appellee's action against it.

The plaintiff argued that the contract was a part of the record and was before the court at the time the judgment was entered on the motion for summary judgment. Intrusion-Prepakt, Incorporated, has been a party defendant in these proceedings since the filing of the action. There is no question but that the contract involved was a part of the court file, and is a part of this record.

In Frick v. O'Hare-Chicago Corp., 70 Ill App2d 303, 217 NE2d 552, the court stated on page 309:

"The basic question on this appeal is: Does an examination of this entire record show fairly and without doubt that there is no genuine issue as to whether defendant O'Hare came within the Structural Work Act term of 'having charge of' the construction work, during the performance of which plaintiff was injured?"

In Bertlee Co., Inc. v. Illinois Publishing & Printing Co., 320 Ill App 490, 495, 52 NE2d 47, the court said:

"A summary judgment can be granted only where the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The purpose of the summary judgment procedure is not to try an issue of fact but rather to determine whether there is an issue of fact."

We realize from the record before us that the trial court's file was extremely large in this case, and that the judge who heard the motion for summary judgment possibly could have overlooked the answer to interrogatories to which the contract was attached. However, we cannot say here that it was not brought to the trial court's attention. The defendant contends that it could not properly be brought to the trial court's attention because it was not included in any affidavit submitted by the plaintiff. Section 57 of the Civil Practice Act (Ill Rev Stats 1965, c 110, par 57) under subsection 3 provides that the judgment or decree sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law.

■ We conclude that the contract, the interpretation of which is important to a decision in this case, was legally before the motion judge and that it, being incorporated in an answer under oath to interrogatories by Intrusion-Prepakt, comes within the definition of an affidavit.

G. M. & O. relies somewhat upon Kobus v. Formfit Co., 56 Ill App2d 449, 206 NE2d 477, which case has been reversed by the Supreme Court since the filing of G. M. & O.'s brief. In Kobus v. Formfit Co., 35 Ill2d 533,

221 NE2d 633, the court held that a contract which provided that the contractor shall permit and facilitate the inspection of work by the owner and his agents, and that the owner may order changes in the work, was sufficient to hold an owner upon the theory that he was "in charge of" the work within the meaning of the Structural Work Act.

In Larson v. Commonwealth Edison Co., 33 Ill2d 316, 325, 211 NE2d 247, the court said:

> "Even at common law retention of the right to control the work is sufficient to subject one to duty and tort responsibility, (see: Schwartz v. Gilmore, 45 Ill 455, 457; Best Manufacturing Co. v. Peoria Creamery Co., 307 Ill 238, 241–242; Hartley v. Red Ball Transit Co., 344 Ill 534, 539; Restatement of Torts, sec 414 and comment; 57 CJS, Master & Servant, sec 602) and the retention of the right to control must carry with it the same duty and responsibility under the Scaffold Act. Otherwise, the absurd result would be that a statute designed to broaden the common-law duty and to give added protection, would be construed as imposing a lesser duty than the common law. Certainly it was not the legislative intent that those retaining the right to supervise or control the work could be freed from duty by doing nothing, for section 9 imposes liability for a wilful failure to comply with any of the provisions of the act, as well as wilful violation.

The contract in the case before us required the contractor to comply at all times with any instructions given by the designated representative of the owner. To that extent the owner was given the power to supervise and control the work.

In Carlson v. Metropolitan Sanitary Dist. of Greater Chicago, 64 Ill App2d 331, 337, 213 NE2d 129, the court said:

"Defendant says that the actual control of the manner and method of doing the work, not the mere right to control, is necessary for an owner to be a party 'having charge of' the work under the Structural Work Act. The defendant in its contract retained the right to control the manner and method of doing the work and the trial judge not only equated 'in charge' as used in the Scaffold Act with control over the manner and method of doing the work but also considered control over the manner and method of doing the work as synonymous with actual control over the minutiae of detail involved in a construction project. We agree with the plaintiff that this is not a proper test. In Gannon v. Chicago, M., St. P. & P. Ry. Co., 22 Ill2d 305, 175 NE2d 785, the court pointed out that all the construction work, including the bricklaying, assembling and construction of the scaffolds and other operations, was done by Marhoefer & Company and its employees under a contract with the railroad and that although the railroad architect and engineers made frequent inspections of the structural activities, there was no inspection of the scaffolds and ladders or other appliances at any time and they exercised no control over the manner in which the work was being done. On these facts the Supreme Court in Gannon held (p 323) that it was a question of fact whether the owner could be deemed to be in charge of the construction within the meaning of the Act, and that it was the province of the jury, under proper instructions, to make that determination."

A recent case, Crotty v. High-Low Foods, Inc., 78. Ill App 2d 237, 223 NE2d 442, further clarified this point in holding that more than one person or firm may be in charge of a construction job, and that one need not

435

erect and/or use the scaffold to come within the purview of the Act as "having charge of" the job.

■■■ There can no longer be any doubt that one having the power to supervise or control may be held liable in an action under the Structural Work Act, and that the question is one of fact whether the owner can be deemed to be in charge of the construction within the meaning of the act. Since it is a question of fact, it is the province of the jury to make that determination after being properly instructed. As to the contention that the pleadings and depositions, together with the affidavit, show that there is no genuine issue as to any material fact, we feel that this is untenable. The affidavits in support of the motion and in opposition thereto create a genuine issue of material fact.

The defendant filed an affidavit of Erickson, who was the field superintendent for Intrusion-Prepakt, Incorporated, to the effect that no G. M. & O. employee at any time gave any instructions or orders regarding the work. Plaintiff filed a counteraffidavit which set forth that Erickson, while being interviewed on November 2, 1962, signed a statement which is in direct contradiction of his later deposition and his affidavit in support of G. M. & O.'s motion for summary judgment. That statement was attached to the counteraffidavit and was introduced as plaintiff's Exhibit 1 at the taking of the deposition. Erickson at the deposition hearing admitted that he had signed the contrary statement. Both the affidavit and the statement went to the question of whether the defendant, G. M. & O., actually controlled and supervised the work. Under the foregoing circumstances it cannot be said that there is no triable issue of fact present.

The judgment of the trial court is reversed and remanded with directions to vacate the order granting sum-

mary judgment and enter an order denying the motion for summary judgment.

Reversed and remanded with directions.

SCHWARTZ and DEMPSEY, JJ., concur.