FRANK DI PRIMA, Plaintiff-Appellant, *v.* GRADY EDWARDS *et al.*, Defendants-Appellees.

First District (4th Division)    No. 63147

Opinion filed December 8, 1977.

Philip E. Howard, Ltd., of Chicago (William J. Harte, Ltd., of counsel), for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey and Thomas F. Bridgman, of counsel), for appellees.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

The plaintiff, Frank Di Prima, brought this action in the circuit court of Cook County against the defendants, Grady Edwards and Pearl Edwards. Plaintiff sought to recover for injuries allegedly sustained from violations of the Illinois Structural Work Act (Ill. Rev. Stat. 1969, ch. 48, par. 60 *et seq.*). The trial court granted defendants' motion for summary

judgment and subsequently denied a motion to vacate that order. The plaintiff appeals.

The issue presented for review is whether the pleadings and affidavits filed by plaintiff raise a genuine issue of material fact as to the defendants' liability under the Structural Work Act (hereinafter referred to as the Act), and whether the court erred in granting summary judgment in the defendants' favor.

The record establishes the facts to be as follows. Plaintiff filed his complaint alleging that on June 24, 1970, he was working on a building owned by the defendants at 3120 North Sayre, in Chicago, when he fell from a window to the ground and sustained serious injuries. Plaintiff was working on the building with his father, Biagio Di Prima, who had been hired by defendants to do certain window repairs. Plaintiff alleged that the defendants were in charge of the work being performed and they had violated the Act wilfully by failing to provide safe and adequate ladders and other supports for plaintiff to use in doing the work. Plaintiff complained that he was injured as a direct and proximate result of defendants' violations of the Act and prayed for relief in the sum of $2 million.

The defendants answered plaintiff's complaint and filed a motion for summary judgment supported by affidavits. The plaintiff filed counteraffidavits and a memorandum of law in opposition to the motion. Defendants alleged in their motion that they had exercised absolutely no control over the work being performed at the time of the accident by the plaintiff, and that the deposition of the plaintiff contained no facts by which either of the defendants could be deemed to have been in charge of, or in any way in control of, the work. And further, that the affidavits of the defendants evidence they were not in control of the work and therefore could not be deemed in charge of the work within the meaning of the Act.

Section 9 of the Act (Ill. Rev. Stat. 1969, ch. 48, par. 69) imposes civil liability for wilful violations of the Act upon "Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of this act * * *." The defendants asserted that in order to impose liability on an owner under the Act, section 9 of the Act requires that the owner be "in charge of" the work involved. (See *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 321, 175 N.E.2d 785, 793.) Furthermore, in a case under the Act, the mere allegation in plaintiff's complaint that defendants were in charge of the work cannot overcome defendants' motion for summary judgment when that motion is supported by evidentiary facts to the contrary. *Carruthers v. B. C.*

*Christopher & Co.* (1974), 57 Ill. 2d 376, 380-81, 313 N.E.2d 457, 459-60.

In his affidavit, defendant Grady Edwards stated that he entered into an oral contract with Biagio Di Prima for the replacement of certain attic windows in his home. He told Di Prima the type of windows to be installed, but did not tell him how to install them. Edwards did not provide any materials or tools for the job, but relied totally on Biagio Di Prima to supply the tools and equipment necessary to complete the work for which he had contracted. He also stated he was interested only in the finished product and that he expressed no opinion as to how the work should be accomplished. He stated, finally, that he was not in charge of the work, exercised no supervision, and was not involved in the ongoing activity of the job.

In her affidavit, Pearl Edwards stated that she merely asked Biagio Di Prima to speak to her husband about doing some work at their home; she never discussed the work to be done with Di Prima. She also stated that she was not in charge of the work, exercised no supervision, and was not involved in the ongoing activity of the job.

Plaintiff filed his deposition in which he stated that on the day of the accident he was at the Edwards' home working for his father. The plaintiff, a bricklayer, was temporarily on strike from his regular job. Frank Di Prima talked to Grady Edwards for the first time shortly after he arrived at the Edwards' home. Edwards went upstairs in his home to where the work was to be done. Plaintiff accompanied him and Edwards told the plaintiff what he wanted done. Edwards stated he wanted all the old frames taken off the windows and the new frames put on. Frank Di Prima then asked Edwards if there was an extension ladder he could use because he only had two carpenter horses with him and a little plank. He told Edwards that it was a little hard for him to reach over to where the work was to be done with such equipment. Plaintiff stated that the reason for his request was that his equipment was insufficient for the job to be done. Edwards stated that he had one ladder but no extension ladder, and that plaintiff did not need an extension ladder to complete the job because he had a scaffold. Edwards then left the premises and plaintiff did not see him again that day. Plaintiff had seen Pearl Edwards in the morning when she went into the basement, but did not see her or speak to her again that day.

Plaintiff stated that he had removed window frames similar to the frames at the Edwards' house before, and that he had always used ladders and scaffolding. Although the Di Primas' owned some ladders that they used in their construction business, they did not have them on the job that day. Plaintiff stated that the window he was trying to remove at the time of the accident had an arch and this was the first window with an arch that he had ever attempted to remove. The area of the attic windows was

about 2 to 2½ feet from the floor to the sill and approximately 5 feet from the sill to the top of the window. Plaintiff constructed a scaffold of two horses and planks, but used no ladders. At the time of the accident, the planks were nailed to the horses. He removed the first window successfully. The accident happened when he was taking out the second window. Plaintiff stated that it was "a little hard." He was working from the inside. He "cut" and then started to pull at the frame when the scaffold moved back a little and he lost control, going forward. Plaintiff then fell out of the window. He recalled falling and not being able to catch hold any place. The next thing he recalled was hearing somebody in the hospital.

The plaintiff contends that the record here established a genuine issue of material fact as to defendants' liability. According to plaintiff, the facts establish a wilful violation of the Act, because the facts show that there was an improper use of the scaffold and a failure to use the necessary extension ladder with defendants' knowledge. Therefore, he maintains that defendants are not free from liability under the Act as a matter of law, and that the jury should have been able to pass upon the facts and determine defendants' liability and the plaintiff's damages. We disagree.

■■■ It is not disputed that under the proper circumstances plaintiff's injury is expressly covered by sections 1 and 9 of the Act. (Ill. Rev. Stat. 1969, ch. 48, par. 60, 69.) It is also established, as plaintiff contends, that contributory negligence is not ordinarily a defense under the Act. (*Bryntesen v. Carroll Construction Co.* (1963), 27 Ill. 2d 566, 568-69, 190 N.E.2d 315, 317.) Therefore, the primary question in the instant case becomes whether the defendant homeowners could be deemed to have been "in charge of" the work performed within the meaning of the Act and consequently liable to plaintiff under the Act. To establish liability under the Act, an owner or other person must have been in charge of the operation which involved the violation from which the injury arises. (*Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 323, 175 N.E.2d 785, 794.) The trial court did not err in granting summary judgment to defendants, if the pleadings, deposition of plaintiff, affidavits, and counteraffidavits show that no genuine issue was raised as to the material fact that the defendant owners were not in charge of the work during the performance of which plaintiff was injured. *Melvin v. Thompson* (1963), 39 Ill. App. 2d 413, 415, 188 N.E.2d 497, 499.

■■■ It is true that the purpose of the Act is remedial. In *Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 322, 211 N.E.2d 247, 251, the court held that the owner of the premises where the injury occurred was in charge and stated as follows:

"Rather, consistent with its beneficent purpose of preventing injury to persons employed in the extra-hazardous occupation of structural work, the thrust of the statute is not confined to those who perform, or supervise, or control, or who retain the right to supervise and control, the actual work from which the injury arises, but, to insure maximum protection, is made to extend to owners and others who have charge of the erection or alteration of any building or structure."

However, it is also fundamental that the mere fact of ownership of the premises is not sufficient to establish liability under the Act. (*Gannon*, at 319-20; *Scrimager v. Cabot Corp.* (1974), 23 Ill. App. 3d 193, 196, 318 N.E.2d 521, 523.) In *Gannon*, at page 321, the supreme court stated as follows:

"Furthermore, in construing section 9 in its entirety, as we are obliged to do, we note that the legislature imposed civil liability only for 'wilful violations.' Wilful violations means [*sic*] knowing violations, and in the nature of things they can be perpretrated [*sic*] only by persons directly connected with the operations, and not by virtue of mere ownership of the premises. The inclusion of this phrase in the act, therefore, further evidenced a legislative intention to impose the duty of compliance upon those having charge of the work."

This statement was reaffirmed by the court in *Larson*, at page 322, wherein the court stated:

"In the *Gannon* case, * * * we held that an owner must have some direct connection with the operations, over and above mere ownership or the employment of an independent contractor * * *."

In *Warren v. Meeker* (1973), 55 Ill. 2d 108, 112, 302 N.E.2d 54, 57, in reviewing the cases wherein liability was imposed upon persons who "had charge of" the work, the court noted:

"In each, the party against whom liability was asserted participated to some extent in an ongoing activity protected by the Act."

In *Kobus v. Formfit Co.* (1966), 35 Ill. 2d 533, 537, 221 N.E.2d 633, 635, the court stated:

"The Scaffold Act is a statutory enactment to protect those engaged in extra-hazardous work, and recognizes a duty upon certain categories of individuals to use specified safeguards and standards of safety in the erection of structures where such work employs the use of scaffolds. It does not place a duty, and therefore a corresponding liability for its violation, merely upon the ownership of the premises upon which such construction is being

undertaken. It places that duty, among others, upon an owner 'having charge of' such construction of a building."

Our supreme court has apparently become more conservative as to who is in charge of work within the meaning of the Act. In *McGovern v. Standish* (1976), 65 Ill. 2d 54, 69, 357 N.E.2d 1134, 1142, the court recognized that a contractual duty to supervise work merely creates a duty to see that the building when constructed meets the plans and specifications contracted for, and that the right to inspect the work is ancillary to the right to supervise. The court stated that these rights alone cannot form a basis for a finding of coverage under the Act. The court also stated in *McGovern* that "before a defendant may be found to be in charge of the work, there must be a showing that he had some direct connection with the construction operations." *McGovern*, at 67.

A review of the cases cited by plaintiff reveals that the decisions affirming judgments for plaintiffs, or reversing summary judgment, or directed verdicts for defendants are primarily based on contractual provisions which raise a genuine issue of material fact as to whether the defendants were in charge of the work. (*Scrimager v. Cabot Corp.* (1974), 23 Ill. App. 3d 193, 318 N.E.2d 521; *Voss v. Kingdon & Naven, Inc.* (1972), 9 Ill. App. 3d 30, 291 N.E.2d 235; *Krause v. Caterpillar Tractor Co.* (1971), 131 Ill. App. 2d 873, 268 N.E.2d 904; *Moroni v. Gulf, Mobile & Ohio R.R. Co.* (1967), 86 Ill. App. 2d 426, 230 N.E.2d 55.) For example, in *Scrimager*, the defendant had a written contract with the plaintiff. The court noted the many provisions of the contract which granted defendant the right to control the work. The defendant therein had the right to discharge any incompetent employees of plaintiff's, to require plaintiff's compliance with instructions given by defendant's engineer, the right to suspend work on the job, and the right to terminate work due to weather. *Scrimager*, at 195.

■■ In the instant case, there is no evidence that the oral contract between the defendants and plaintiff granted to defendants any right to supervise, direct, observe, or control the manner or method of plaintiff's work. There is no evidence that any such control was in fact exercised. In fact, there is no showing that defendants had any direct connection with the operation engaged in by the plaintiff. We believe that the cases cited by plaintiff generally entail a degree of involvement and participation greater than that evidenced by the instant defendants. The Edwards did not supply plaintiff with an extension ladder because they did not own one. However, defendant Grady Edwards did not preclude the plaintiff from using the ladder that was available. He merely suggested to plaintiff that a ladder was not essential to complete the work, and plaintiff voluntarily proceeded to work without a ladder. Edwards then left the premises for the day. He attested that he only told plaintiff what he

wanted accomplished, rather than directing him how to do the job. Plaintiff attested that he only saw defendant Pearl Edwards in the morning of the day of the accident. She gave him no directions regarding the work to be performed. Neither of the defendants checked during the day on the progress of the work or even observed plaintiff at work. In *Warren v. Meeker* (1973), 55 Ill. 2d 108, 111, 302 N.E.2d 54, 56, the defendant, having supplied the plaintiff with a defective ladder, was found not to be in charge of the work performed as a matter of law. In *Daniels v. Weiss* (1974), 17 Ill. App. 3d 294, 298, 308 N.E.2d 46, 49-50, the fact that defendant's janitor had apparently given painters some directions to ensure the progress of work on defendant's home and had pointed out the work to be done, was insufficient to render the janitor in charge of the work involved within the meaning of the Act.

Plaintiff, here, has sought to impose upon the defendant homeowners liability for employing him to work at their home, and the courts of this State have consistently held that status alone is an insufficient basis for imposing liability under the Act. We agree with the defendants' contention that to impose liability for plaintiff's injuries under the instant circumstances would be to place an unreasonable burden on all homeowners who contract for improvements on their homes.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

ROMITI and LINN, JJ., concur.