ALTON ANGUS, Plaintiff-Appellant, v. RONALD DOSS, Indiv. and d/b/a Doss Construction Company, *et al.*, Defendants (Bernadette Angus, Plaintiff; Barry W. Gurganus *et al.*, Defendants-Appellees).

Third District No. 3—86—0393

Opinion filed June 9, 1987.—Rehearing denied June 30, 1987.

BARRY, J., dissenting.

G. Douglas Stephens and Harold A. Schlicksup, both of G. Douglas Stephens & Associates, P.C., of Peoria, for appellants.

James R. Morrison, of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellees.

JUSTICE STOUDER delivered the opinion of the court:

Plaintiff-appellant, Alton Angus, and his wife, Bernadette Angus, filed a multicount complaint against the defendants-appellees, Barry Gurganus and Patty Gurganus, and certain other defendants not parties to this appeal. Count 9 of the complaint was brought by Alton to recover damages caused by an alleged violation of the Illinois Structural Work Act (Act) (Ill. Rev. Stat. 1981, ch. 48, par. 60 *et seq.*). The circuit court of Tazewell County granted summary judgment in favor of the defendants-appellees and against Alton as to the Structural Work Act count, ruling that there was no question of fact that the defendants did not have charge of the work. All other counts of the complaint had previously been dismissed on motion. This appeal follows.

The facts disclose the defendants purchased property sometime around 1971 or 1972. In 1974 they hired an individual to put in a gravel driveway and later, in 1979, they hired an individual to do the excavation work necessary to construct a basement. Once the excavation was completed, the defendants dug and poured the footings and laid the concrete blocks used for the basement walls. Thereafter, they put in the subfloor. Subsequently, in 1981, the defendants entered into a contract, entitled "Contract for Construction of Residence," with Alton's employer, Ron Doss Construction Company, Inc., wherein the

contractor was employed to construct the interior walls, the stairwell downstairs, and the stairwell in the garage; to install the interior wooden trim; to hang doors; to hang the exterior siding; and to put on the roof. The contract identified the defendants as "Buyers" and the construction company as "Seller." The contract contained the following provision:

> "6. In connection with this contract, it is specifically agreed and understood by the parties that the operation, control and supervision of the construction to be done by Seller shall be bourne entirely by Seller, and Buyers shall have no right to control and direct any employee, contractor, subcontractor or employee of any subcontractor while working on the premises."

At the time of his injury, November 27, 1981, Alton was standing on a stud wall while installing roof trusses. Installation of the stud wall and the roof trusses was a part of the Doss contract with the defendants. No equipment, materials, tools, scaffolding, ladders, or similar equipment was supplied by the defendants. Alton suffered personal injuries and property damage as a result of a fall from the top of the stud wall. Thereafter, this cause of action was filed.

The paramount issue we are asked to determine on appeal is whether the trial court erred in ruling that as a matter of law the defendants were not in charge of the work being performed which resulted in injury to the plaintiff.

Alton argues that the defendants were in charge of the work because, unlike the average homeowner, they performed much of the construction work themselves. They personally (1) hired people to perform various work; (2) priced materials and supplies; (3) purchased a large amount of the materials and supplies; and (4) scheduled and coordinated much of the work. Alton, in his deposition, stated that from his experience, observations, and conversations with his employer-contractor, he believed the defendants were acting as the general contractor for the construction of their house.

On the other hand, defendants contend they established, as a matter of law, that they did not have charge of any aspect of the work which involved the alleged violation of the Act or which created Alton's injury. They argue they did not supervise, direct, or control the work of Alton's employer-contractor in any fashion. Nor did they furnish any materials, tools, equipment, scaffolding, or the like for use by any of the workmen, including Alton.

■■ ■ Section 9 of the Illinois Structural Work Act (Ill. Rev. Stat. 1981, ch. 48, par. 69) imposes civil liability for wilful violations of the Act upon "[a]ny owner, contractor, sub-contractor, foreman or other

person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of this act." To establish liability under the· Act, an owner must have been in charge of the operation which involved the violation from which the injury arises. (*Gannon v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.* (1961), 22 Ill. 2d 305, 323, 175 N.E.2d 785, 794.) Mere ownership of the premises is not sufficient to establish liability under the Act. (22 Ill. 2d 305, 319-20, 175 N.E.2d 785.) The trial court did not commit error in granting summary judgment in favor of the defendants if the pleadings, deposition of plaintiff, affidavits, and counteraffidavits show that no genuine issue was raised as to the material fact that the defendant owners were not in charge of the work during the performance of which plaintiff was injured. (*Di Prima v. Edwards* (1977), 55 Ill. App. 3d 633, 371 N.E.2d 252.) We are of the opinion that the trial court did not err in granting summary judgment in favor of the defendants under the circumstances of the instant case.

While it. is true that the defendants in this case are more knowledgeable and are seemingly well versed in the construction industry, they do not rise to the same level as the defendant in the principal case relied upon by Alton. (See *Bishop v. Crowther* (1980), 92 Ill. App. 3d 1, 415 N.E.2d 599.) In that case the defendant admitted, among other things, that he worked in the construction industry all his life and was familiar with construction customs and practices. He was well versed in roofing work. He also admitted he had greater knowledge of construction industry and safety aspects of the industry than did the average homeowner. He was also part owner of a construction company. Such factors are not present here.

■ We also note that other factors probative of having charge are not present in this case, such as (1) ownership of equipment used at the jobsite (*Winter v. Davis* (1980), 85 Ill. App. 3d 912, 407 N.E.2d 696); (2) the right to stop work or terminate employment (*Fruzyna v. Walter C. Carlson Associates, Inc.* (1979), 78 Ill. App. 3d 1050, 398 N.E.2d 60); (3) supervision or control of the work or retention of the right to do so (*Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 211 N.E.2d 247); (4) responsibility for employee safety (*Pantaleo v. Gamm* (1969), 106 Ill. App. 2d 116, 245 N.E.2d 618); and (5) inspections and other activities at the jobsite (*Emberton v. State Farm Mutual Automobile Insurance Co.* (1978), 71 Ill. 2d 111, 373 N.E.2d 1348). We believe the several factors which would tend to favor the plaintiff, such as (1) familiarity with construction methods (*Norton v. Wilber Waggoner Equipment Rental & Excavating Co.* (1979), 76 Ill.

2d 481, 394 N.E.2d 403), and (2) participation in ongoing activities at the work site (*Warren v. Meeker* (1973), 55 Ill. 2d 108, 302 N.E.2d 54), do not outweigh the factors mentioned previously. Accordingly, we will not disturb the court's findings.

For the foregoing reasons, the judgment of the circuit court of Tazewell County is affirmed.

Affirmed.

WOMBACHER, J., concurs.

JUSTICE BARRY, dissenting:

I am persuaded that a question of fact exists as to whether defendants were in charge of the work within the meaning of the Illinois Structural Work Act at the time plaintiff was injured and that the trial court erred in entering summary judgment in favor of the defendants. Therefore, I dissent.

Judge Ivan Yontz *denied* defendants' motion for summary judgment on March 14, 1985, and set the cause for a jury trial. It appears that Judge Yontz then retired. On February 7, 1986, defendants filed a motion to reconsider the denial of the motion for summary judgment before Judge Donald Courson, who granted the motion to reconsider on May 6, 1986, and entered summary judgment on behalf of defendants. In his judgment order, Judge Courson included the following paragraph in his findings:

> "2) In Winter vs. Davis 85 Ill. App. 3rd 912, a trial court ruling on a directed verdict for homeowner defendant was sustained on appeal. In Di Prima vs. Edwards 55 Ill. App. 3rd 633, a granting of defendant's homeowner motion for summary judgment was sustained on appeal. In each of those cases the homeowners participation *in the particular activity that led to injury* was greater than in the instant case." (Emphasis added.)

Obviously the trial court gave primary consideration to defendants' supervision or control of the particular work being done by plaintiff at the time of the accident.

In *McGovern v. Standish* (1976), 65 Ill. 2d 54, 357 N.E.2d 1134, the Illinois Supreme Court did indicate that the architect-defendant could not be held liable under the Illinois Structural Work Act unless he was in charge of the particular activity resulting in the plaintiff's injuries. However, in *Emberton v. State Farm Mutual Automobile Insurance Co.* (1978), 71 Ill. 2d 111, 373 N.E.2d 1348, this court's reliance on that holding in *McGovern* proved to be misplaced when the

supreme court ruled that liability under the Act is not confined to those who perform, supervise, or control the actual work which causes the injury but also extends to owners and others who have charge of the erection or alteration of any building. The *Emberton* decision followed closely the leading case of *Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 211 N.E.2d 247, where the court said:

> "[C]onsistent with its beneficent purpose of preventing injury to persons employed in the extra-hazardous occupation of structural work, the thrust of the statute is not confined to those who perform, or supervise, or control, or who retain the right to supervise and control, the actual work from which the injury arises, but, to insure maximum protection, is made to extend to owners and others who have charge of the erection or alteration of any building or structure." (33 Ill. 2d 316, 322, 211 N.E.2d 247, 251.)

This same point was emphasized in *Johnson v. Commonwealth Edison Co.* (1985), 133 Ill. App. 3d 472, 478 N.E.2d 1057, where the owner of a power plant under construction at the time of plaintiff's injury appealed from a jury verdict in favor of the plaintiff. The reviewing court affirmed and in its decision discussed *McGovern, Emberton,* and *Larson,* with the following observations:

> "As a result, is is not necessary that a party be in direct charge of the particular operation from which the injury arose if it is in charge of the overall work for the project under construction. [Citation.] One or more parties can have charge of the phase of the work in connection with which an injury occurs. In that event, all of them would have charge of the work within the meaning of the Act." 133 Ill. App. 3d 472, 478, 478 N.E.2d 1057.

It is clear from the record that defendants scheduled and coordinated all the various activities at the construction site. It is not disputed that Mr. Gurganus ordered supplies and materials, hired the various subcontractors to do individual phases of the construction work, made day-to-day decisions concerning the scheduling of the work, was physically present at the site on a regular basis, and did a great deal of the work himself. Among other things, defendant dug and poured the foundation footings, laid the cinder block foundation, put in floor joists and subflooring, installed ductwork and piping for the air conditioning system, installed the drywall (with the help of some friends), and also installed the electrical wiring, tile and terrazzo, and bathroom fixtures.

Unlike the majority, I consider *Bishop v. Crowther* (1980), 92 Ill. App. 3d 1, 415 N.E.2d 599, to be controlling because of the close factual similarities. The court in *Bishop* based its ruling not only on the owner's knowledge of the construction industry but also on the fact that he "interjected himself into the progress and completion of the work. In short, defendant was not liable because of mere ownership, but because of his supervision and control of the work." (92 Ill. App. 3d 1, 11, 415 N.E.2d 599, 607.) In *Bishop*, as here, the owner coordinated the various contractors and functioned as the general contractor for the entire project. It is the role the owner assumes that is the determinative factor as to whether the owner had charge. (*Fruzyna v. Walter C. Carlson Associates, Inc.* (1979), 78 Ill. App. 3d 1050, 398 N.E.2d 60.) In *Simmons v. Union Electric Co.* (1984), 121 Ill. App. 3d 743, 460 N.E.2d 28, *affirmed* (1984), 104 Ill. 2d 444, 473 N.E.2d 946, both the appellate court and the supreme court affirmed the trial court's determination that the owner was in charge of the work where employees of the owner regularly inspected the plant, determined when and to what extent maintenance work was needed on the electrical system installed by the plaintiff's employer, and summoned the plaintiff's employer when services were required. Again, it was the role of the owner in the overall project that was found to be controlling.

The two cases relied upon by Judge Courson in his order are distinguishable on their facts from the case at bar. *Winter v. Davis* (1980), 85 Ill. App. 3d 912, 407 N.E.2d 696, involved an injury to a painter who fell from a ladder while painting the home of the defendant. The facts indicated that the owner was not in charge of the project but rather that he had contracted with three teachers to do the painting and that he was rarely present during the work. Although he supplied some equipment, the ladder involved in the injury did not belong to the defendant. The court concluded that the defendant's "nexus to the work was that of a mere owner who had contracted for a paint job." (85 Ill. App. 3d 912, 918, 407 N.E.2d 696, 701.) *Di Prima v. Edwards* (1977), 55 Ill. App. 3d 633, 371 N.E.2d 252, involved some repair work on the windows of defendant's building. The court upheld a summary judgment in favor of defendant owner and relied primarily upon the *McGovern v. Standish* decision for the view that the owner was not in charge if he had no direct connection with the construction operation and no contractual duty to supervise the work. This case preceded the modification of *McGovern v. Standish* by *Emberton v. State Farm Mutual Automobile Insurance Co.*, as discussed above. Neither *Winter v. Davis* nor *Di Prima v. Edwards* in-

volved a multiphased construction project such as the one before us.

As previously indicated, the question here is whether defendants were in charge of the erection of their house. I believe that question presents a factual issue for a jury to decide. The trial court erred in entering summary judgment, and I would reverse and remand for a jury trial.