JAMES WINTER, Plaintiff-Appellant, v. CLAUDE DAVIS, Defendant-Appellee.

First District (1st Division)  No. 79-874

Opinion filed June 16, 1980.

Sloan & Connelly, P. C., of Chicago (Michael P. Connelly, of counsel), for appellant.

Jacobs, Williams & Montgomery, Ltd., of Chicago (Lloyd E. Williams, Barry L. Kroll, and David A. Novoselsky, of counsel), for appellee.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff, James Winter, brought an action under the Structural Work Act (or Act) (Ill. Rev. Stat. 1975, ch. 48, pars. 60-69) for injuries he incurred in a fall from a ladder while he was painting the home of defendant, Claude Davis. At the close of all evidence in a jury trial, both parties moved for directed verdicts. The circuit court of Cook County denied plaintiff's motion and granted the motion of defendant.

Plaintiff appeals, seeking the reversal of the directed verdict for defendant and the ordering of a directed verdict in his favor and a remand for further proceedings. The parties raise four issues on appeal: (1) whether defendant, a private homeowner, is subject to the Structural Work Act; (2) whether defendant had charge of the work; (3) whether defendant wilfully violated the Act; and (4) whether the proximate cause of plaintiff's injury was defendant's violation of the Act.

Defendant, Claude Davis, owned a two-story home in Palatine, Illinois. During April of 1976, Davis entered into an oral contract with Henry Sampson, who was acting for himself and on behalf of plaintiff, James Winter, and Robert Darnell. Sampson, Winter and Darnell were high school teachers who agreed to scrape, prime and paint Davis' home.

Davis agreed to pay hourly wages for scraping and a flat sum for one coat of paint. Each painter kept an accounting for his hours and Davis paid them individually by check. The workers decided between themselves how many workers were needed, which days and hours they would work, and which person would do a particular task at a given time. They generally worked after school, on weekends and during their summer vacation. Davis only stipulated that the job be completed by a certain date.

Davis provided various equipment for their use: scrapers, torches, brushes, one wooden extension ladder, ladder jacks and a walk board. When the workers experienced difficulties with the propane torches, he bought an additional gas torch for their use. Sampson borrowed a second extension ladder from his neighbor to enable the erection of a scaffold that would reach the second floor. There were no clamps or stops on the bottom of the walk board to keep the ladder and jack from moving past the length of the walk board. Also, the ladder lacked rubber or plastic tips on the tops. The workers were not required to use this equipment; they could have supplied their own, but chose to use it.

Davis told Sampson that about 20 coats of old paint had to be removed to assure that the new paint would adhere. He demonstrated how the old paint could be blistered up with a blow torch and removed

with a scraper knife. Davis testified that although he suggested this method, the workers were free to substitute any equally effective method of paint removal. Davis specified that a particular primer be used, and he mixed the primer and provided it for the workers. Davis did not give the workers instructions on the use of the ladder, walk board or ladder jacks, nor instruct them how to set up the scaffold.

Davis generally was not home while the men were working. He did remember observing them work on a couple of occasions when he returned home after work. He saw them use the scaffold once. Davis once instructed the men to scrape the paint off a specific area they had missed.

Sampson had painted houses on numerous occasions, had used scaffolding six or eight times, but had never scraped paint using torches. Davis had painted houses since he was 12 years old, and had begun work on his home with his son prior to hiring the workers. Winter had never used scaffolding before; he had done interior house painting commercially, and both interior and exterior painting on his own home.

On July 6, 1976, Davis left his home on a business trip. He was not present during the accident and did not return for several weeks. On July 6, 1976, Sampson and Winter were working, scraping and painting a section of the house above the dining room window. Both ladders were extended, with the walk board between them. The ends of each ladder rested against the house on wet paint. The ladder bottoms were placed outside a sidewalk on the grass. Facing the house, the ladder on the right belonged to Sampson's neighbor, and the left ladder was owned by Davis. Darnell was working on the opposite side of the house.

Immediately prior to the accident, Sampson was on the left side of the walk board and Winter was on the right ladder, four or five rungs above the walk board. Winter started to come down the ladder. When he stepped down, he felt a jiggling kind of bounce in the ladder. Winter testified that this motion was not uncommon when the workers moved on the scaffold. However, this time the shaking was more severe and the ladder Winter was on started moving to the right. Winter jumped off and tried to reach the bay window of the house, but fell upon the sidewalk, sustaining serious injuries. The ladder Winter was working on came to rest against the porch, and the walk board fell to the ground.

The painters solely determined how to position and set up the scaffold. Sampson and Winter believed the manner this was done was safe and adequate to do the job. They neither saw nor complained of defects in the equipment Davis furnished, nor did they know what caused the accident.

After the accident, Sampson and Darnell continued working on the house in substantially the same manner. They finished several weeks later.

In a September 1976 conversation with Sampson, Davis first learned about Winter's accident.

The directed verdict in favor of defendant Davis must be reviewed in light of the familiar rule of *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504. A party is entitled to a directed verdict in those cases in which all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict could ever stand.

We find it unnecessary to decide whether defendant as a private homeowner is subject to the Structural Work Act because, if he is not, there is no liability under that Act; if he is, he is not liable under the evidence here presented because he was not in charge of the work.

Winter contends that Davis had charge of the work because he owned the house and exercised broad control over and involvement in the painting project. Davis maintains that if anyone had charge of the work, it was the painters themselves.

■■ The issue of who has charge of the work is generally a fact question for the jury. (*Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 175 N.E.2d 785.) However, this issue may be determined as a matter of law where the evidence presented is insufficient to create a factual question. *Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1979), 76 Ill. 2d 481, 486, 394 N.E.2d 403; *Fruzyna v. Walter C. Carlson Associates, Inc.* (1979), 78 Ill. App. 3d 1050, 398 N.E.2d 60, *appeal denied* (1980), 79 Ill. 2d 631.

The leading case concerning the construction of "having charge" is *Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 211 N.E.2d 247. *Larson* rejected the requirement that supervision and control of the work was essential to have charge of the work. *Larson* stressed the numerous and diverse factors which showed a connection of authority or an obligation of overall responsibility for the work (33 Ill. 2d, at 321-22):

"The term 'having charge of' is a generic term of broad import, and although it may include supervision and control, it is not confined to it. As was said of the word 'charge' in *People v. Gould*, 345 Ill. 288, 323: 'The word does not necessarily include custody, control or restraint, and its meaning must be determined by the associations and circumstances surrounding its use. "To have charge of" does not necessarily imply more than to care for or to have the care of.' Thus, while the actual exercise of supervision and control over the work and the persons doing it, or the retention of the right to so supervise and control, may be factors bearing on the ultimate factual question of whether an owner is 'in charge,' they are not necessary or conclusive factors, nor is either made a *sine*

*qua non* for liability under the statute. Rather, consistent with its beneficent purpose of preventing injury to persons employed in the extra-hazardous occupation of structural work, the thrust of the statute is not confined to those who perform, or supervise, or control, or who retain the right to supervise and control, the actual work from which the injury arises, but, to insure maximum protection, is made to extend to owners and others who have charge of the erection or alteration of any building or structure."

Ownership, without more, is insufficient to impose responsibility under the Act. (*Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 175 N.E.2d 785.) Our inquiry upon review involves an assessment of the totality of the circumstances. (*Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1979), 76 Ill. 2d 481, 394 N.E.2d 403.) Furthermore, whether a party has charge is determined not only from his contractual obligations but also from the surrounding circumstances and from the role he in fact assumed. *Fruzyna v. Walter C. Carlson Associates, Inc.* (1979), 78 Ill. App. 3d 1050, 398 N.E.2d 60, *appeal denied* (1980), 79 Ill. 2d 631.

Various factors are probative as to whether or not Davis had charge of the work. First, ownership of the scaffold and equipment used in the work is evidence of control. (See *Melvin v. Thompson* (1963), 39 Ill. App. 2d 413, 188 N.E.2d 497.) Davis provided nearly all the equipment utilized in scraping and painting his house (ladder, jacks, walk board, brushes, torches). This equipment was apparently used by Davis and his son in their aborted attempt to repaint the house in the spring of 1976.

Nonetheless, Davis was not contractually required to supply this equipment nor was it a condition of the job that the workers use it. They could choose suitable equipment of their own. Indeed, they borrowed an additional extension ladder from Sampson's neighbor in order to raise the walk board to the second story of the house.

Second, Davis demonstrated to Sampson the technique he had used to blister the old paint with blow torches. However, the men were not required to follow Davis' suggested method provided they substituted an equally effective method.

Third, Davis offered slight or no direction of the work. He provided no direction as to how to set up the scaffold. Moreover, he was rarely present when the work was being done. The only evidence that Davis became involved in the direction of the work was that on one occasion he asked the men to rescrape an area they had missed. At most, this action amounted to an effort to require contract compliance assuring that the quality of the work was done as agreed, rather than involvement in the direction of the work. See *Melvin v. Thompson.*

The right to stop work or terminate employment is the fourth factor we consider. (*Fruzyna v. Walter C. Carlson Associates, Inc.*) Winter contends that this right can be implied from the oral contract because, on one occasion, Davis directed the men to rescrape an area they had missed. Plaintiff again overstates the import of this single event. There is no evidence that Davis personally directed that operation. The painters simply went back later and scraped the area they had missed. The right to stop work must be clear and not assumed (*Fruzyna*) and we will not supply by implication what is not manifested by the parties' actions.

Fifth, we note that the workers enjoyed a tremendous amount of autonomy on the job. They chose the number of men employed, their hours and who was to do a specific task at any particular time. They worked as independent contractors, and their day-to-day activities at the work site were not impeded by Davis.

Finally, we are guided by the court's comments in *Norton*. There, the court noted that Delaney, an agent of the owner, was generally familiar with construction methods and specifically familiar with the bar joists on which plaintiff was injured. Coupled with the fact that Delaney made daily inspections and had work redone, the court found "he was in a peculiarly appropriate position to be the 'first one to know if there is some deviation' and have it alleviated." 76 Ill. 2d 481, 491, 394 N.E.2d 403, 408; accord, *Alfano v. Board of Trade* (1979), 76 Ill. App. 3d 248, 395 N.E.2d 384.

Here, the record indicates that Davis owned and was familiar with the equipment because he had used it himself. However, there is no evidence that he used the walk board with two extension ladders. Instead, he split his ladder to construct a lower scaffold than the one constructed by the workers to reach the top of the house.

Moreover, all the witnesses agreed that the equipment supplied by Davis appeared safe and suitable for the tasks to be performed. No one knew the cause of the accident. Suggestions as to the cause at trial and in the parties' briefs amount to sheer speculation. Winter testified that immediately prior to the accident there was a jiggling kind of bounce in the ladder. This motion was not uncommon when workers moved on the scaffold, but this time the shaking was more severe. There is no evidence that the workers ever complained to Davis about the bouncing motion or that Davis had such knowledge.

Under these circumstances, and because Davis was rarely present during the work, we conclude that Davis was not in a position to assure worker safety or alleviate equipment deficiencies or improper work habits, as in *Norton*.

Other factors relevant under the totality of the circumstances test are

conspicuously lacking in this case. They include the supervision and control of the work or the retention of the right to do so (*Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 211 N.E.2d 247); constant participation in ongoing activities at the work site (see *Warren v. Meeker* (1973), 55 Ill. 2d 108, 302 N.E.2d 54); and responsibility for taking precautions for employees' safety (see *Pantaleo v. Gamm* (1969), 106 Ill. App. 2d 116, 245 N.E.2d 618).

■■ The only real evidence that Davis had charge of the work was that he supplied certain equipment. This factor is mitigated considerably because: (1) the ladder that bounced to the right and that Winter fell from did not belong to Davis; (2) the cause of the accident is unknown and can as easily be attributed to the workers' erection of the scaffold as to equipment defect; (3) the scaffold was not constructed by or on behalf of Davis; and (4) the workers were not compelled to use Davis' equipment. In any event, statutory liability does not attach to one who merely furnishes possibly defective equipment which causes an accident. *Warren v. Meeker.*

■■ In short, assessment of the totality of the circumstances indicates that Davis' nexus to the work was that of a mere owner who had contracted for a paint job. He left all decisions other than what he wanted done (*i.e.*, a stripping of the paint, priming with a particular type of primer, and application of one coat of paint) up to the workmen. His presence at the job site was haphazard and infrequent, and he undertook neither inspection nor supervision duties. The comments of the court in *Di Prima v. Edwards* (1977), 55 Ill. App. 3d 633, 640, 371 N.E.2d 252, amplify our determination to avoid imposing liability merely on ownership status:

> "Plaintiff, here, has sought to impose upon the defendant homeowners liability for employing him to work at their home, and the courts of this State have consistently held that status alone is an insufficient basis for imposing liability under the Act. We agree with the defendants' contention that to impose liability for plaintiff's injuries under the instant circumstances would be to place an unreasonable burden on all homeowners who contract for improvements on their homes."

We conclude that the trial court properly directed a verdict for Davis on the issue of having charge of the work. Accordingly, we need not address other issues raised in this appeal. For the foregoing reasons, the order of the circuit court of Cook County directing a verdict for defendant is affirmed.

Affirmed.

McGLOON and CAMPBELL, JJ., concur.