MARINE BANK OF SPRINGFIELD, Successor Adm'r of the Estate of Fred H. Farley, Plaintiff-Appellant, v. ARCHER DANIELS MIDLAND, Defendant-Appellee.

Third District   No. 3—86—0732

Opinion filed June 10, 1987.

Londrigan, Potter & Randle, P.C., of Springfield (Craig A. Randle, of counsel), for appellant.

Robert Dewey, of Heyl, Royster, Voelker & Allen, of Peoria (Stephen J. Heine, of counsel), for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

The plaintiff, Marine Bank of Springfield, brought this action as the successor administrator of the estate of Fred Farley, alleging that Archer Daniels Midland violated the Structural Work Act (Ill. Rev. Stat. 1981, ch. 48, par. 60 *et seq.*). The court granted defendant's motion for summary judgment and the plaintiff appeals.

In 1983, Archer Daniels Midland (ADM) employed Midwest Industrial Construction (Midwest) as a general contractor at its Peoria plant. Fred Farley was a roofer and ironworker employed by Midwest, and had been working at the ADM plant for approximately one year. ADM also employed two plant engineers who determined what jobs needed to be done and set priorities for the jobs Midwest was to complete. Midwest assigned employees to the various jobs, determined the manner in which the jobs were to be completed, and was responsible for construction safety in the plant.

One of the plant engineers asked Dana Clark, a Midwest principal, to have an employee inspect and make a list of materials needed to repair the leaking roof on the feedhouse annex. Clark assigned the job to Farley and another man. In his deposition, Clark testified that he told Farley to obtain a stepladder, meet the co-worker on the third floor of the feedhouse, then step through a large window onto the flat roof of the adjoining annex to inspect the leaking roof. Farley did not follow Clark's instructions. Instead, he climbed from a third building onto the steep, rain-slickened feedhouse roof, apparently as an alternative means of reaching the annex roof he was told to inspect. As he attempted to cross the feedhouse roof, Farley slipped and fell to the ground, suffering fatal injuries.

On appeal, the plaintiff contends that summary judgment was improper because there were genuine issues of material fact as to whether the feedhouse roof was a support, whether ADM was in charge of the work, and whether ADM wilfully violated the Act. We find that no genuine issues of material fact exist, and therefore, we affirm the trial court's order granting summary judgment.

▉ The Structural Work Act has been liberally construed in order to afford broad protection to those engaged in work activities of a particularly hazardous nature. However, the Act has never been inter-

preted to cover all construction activities or all injuries sustained at a construction site. *Crafton v. Lester B. Knight & Associates, Inc.* (1970), 46 Ill. 2d 533.

The Structural Work Act provides:

> "All scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed *** for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner ***." Ill. Rev. Stat. 1985, ch. 48, par. 60.

The plaintiff asserts that because Farley was using the feedhouse roof as a support or scaffold to enable him to make measurements for repairs, he is entitled to the protection provided by the Structural Work Act. He relies on two Illinois Supreme Court cases as support for the proposition that a roof can be a support or scaffold. (*St. John v. R. R. Donnelley & Sons Co.* (1973), 54 Ill. 2d 271; *Crothers v. La Salle Institute* (1977), 68 Ill. 2d 399.) We acknowledge that in these cases, the supreme court determined that a roof can be a scaffold or support within the meaning of the Act, but find the plaintiff's reliance on them inapposite in this case.

In *St. John*, the deceased fell from a newly constructed roof from which he had been instructed to remove debris and to stack runways for carts used in the construction process. Similarly, in *Crothers*, the plaintiff was injured as the result of a fall from the roof of an unfinished building as he installed insulation. These cases are inapplicable to the instant facts because Farley had no reason to be on the feedhouse roof from which he fell. The feedhouse roof was not in need of repair, nor was it to be used during the repair of the leaking annex roof. It was not necessary for Farley to cross the feedhouse roof in order to inspect the annex roof and his attempt to do so violated his employer's instructions on accessing the annex roof. The mere fact that he fell from a roof did not require the trial court to hold that the roof was a support or scaffold.

The facts in this case are more similar to those in *Swendsen v. Brighton Building & Maintenance Co.* (1976), 41 Ill. App. 3d 930. There, the plaintiff, who was engaged in stacking pilings on the shore after they were removed from the river, fell while walking along a piling in order to get from one end of the stack to the other. This court noted that the plaintiff failed to establish that he had no alternative except to walk on the piling to get from one end to the other and held that the Structural Work Act did not apply. The court stated:

> "The fact that a worker chooses to walk upon a stack of ma-

terial instead of around it does not convert the materials into a scaffold within the meaning of the Act. To hold otherwise, would permit an employee to stand or walk wherever he wishes and, if he is off the ground, his choice becomes a scaffold." 41 Ill. App. 3d 930, 933.

■ Similarly, we believe the plain language of the Act cannot be interpreted to cover the worker's fall in this case. The plaintiff does not assert that Farley had no alternative except to walk across the feedhouse roof in order to reach the annex roof, and in fact, the record establishes that he was specifically instructed to take a safer route. That Farley chose, for whatever reasons, to take a more circuitous, dangerous route across the slick feedhouse roof does not convert the roof into a support or scaffold. Under the facts of this case, the Structural Work Act does not apply as a matter of law.

■ The trial court did not err, in any event, because the plaintiff failed to establish that ADM was in charge of the work as required by the Act. Illinois courts have identified several factors to be considered in determining whether a defendant has charge of the work under the Act. These factors include supervision and control of the work, constant participation in ongoing activities at the site, responsibility for taking safety precautions at the site, and the defendant's familiarity with the construction customs and practices. (*Chance v. City of Collinsville* (1983), 112 Ill. App. 3d 6.) Applying all of the factors to the instant case, we find that the evidence could in no way support a finding that ADM was in charge of the work. ADM's plant engineers set priorities for the work that Midwest was to complete, but left it to Midwest to determine the manner and means to accomplish the work. Additionally, Midwest assigned jobs to its employees and was in charge of construction safety. According to an ADM plant engineer, if he desired changes in the work to be made, he informed Midwest supervisors of the fact because he did not have authority to direct Midwest's employees. Although ADM's engineers walked through the plant on a daily basis and had the authority to order work on one project to stop so that work on another could begin, this is not sufficient to establish that ADM was in charge of the work.

We note that plaintiff also failed to establish that the alleged violation was wilful, as required by the Act. A wilful violation of the Act can occur only when one having charge of the work knows or could have discovered that a dangerous condition exists on a support device. (*Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 453.) The plaintiff unjustifiably asserts that ADM should have known the various routes an employee could take to reach the annex roof, including

crossing the feedhouse roof. We previously determined that ADM was not in charge of the work, but even if ADM had been in charge, nothing in the record suggests that ADM knew or should have known that Midwest employees might use the feedhouse roof as a means of reaching the annex roof. The Act was not intended to impose strict liability on employers for all accidental injuries incurred at a jobsite. A finding that ADM wilfully violated the Act in this case would be an unwarranted extension of the Act.

For the reasons discussed above, we find that the plaintiff failed to establish a cause of action under the Structural Work Act. Summary judgment in favor of defendant Archer Daniels Midland is therefore affirmed.

Affirmed.

STOUDER and WOMBACHER, JJ., concur