NICHOLAS EGIZIO, Plaintiff-Appellant, v. RAYMOND MAJETICH et al., Defendants-Appellees.

Third District   No. 3—87—0622

Opinion filed July 26, 1988.

Roger D. Rickmon and E. Kent Ayers, both of Murphy, Timm, Lennon, Spesia & Ayers, of Joliet, for appellant.

Kathryn A. Spalding and Stephen R. Swofford, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, and Richard J. Siegel, of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Joliet, for appellees Raymond Majetich and Sue Majetich.

Robert L. Speers, of Lindner, Speers & Reuland, P.C., of Aurora, for appellees Fred Gestel and Sandy Majetich Gestel.

JUSTICE SCOTT delivered the opinion of the court:

The trial court granted summary judgment for the defendants, Raymond and Sue Majetich and Fred and Sandy Majetich Gestel. The plaintiff, Nicholas Egizio, appeals.

The record shows that on May 11, 1984, the plaintiff fell from a ladder, fracturing his right ankle and hurting his right elbow. He subsequently sued the defendants, alleging that they were negligent and that they had violated the Illinois Structural Work Act (Ill. Rev. Stat.

1987, ch. 48, par. 60 *et seq.*).

The plaintiff testified to the following in his deposition. At the time of the accident, he was working as a part-time handyman, helping the defendants remodel and restore a house for Fred and Sandy, who were soon to be married. Though the plaintiff believed while he was working for the defendants that the house belonged to Sandy's parents, Ray and Sue, in fact it belonged to Fred and Sandy.

Ray and Sue originally hired the plaintiff to work on the house, since he had previously done work on their home. The parties entered into an oral contract, agreeing to pay the plaintiff $10 per hour. The defendants told the plaintiff to keep track of his own time and allowed him to set his own hours. Generally, he worked on weekends and three to four hours each evening. This time was scheduled around his full-time job as an iron worker.

The parties had no agreement as to who would provide the needed tools. Sometimes the plaintiff used the defendants' tools; sometimes he used his own. The defendants always provided the construction materials.

The defendants generally knew what they wanted done in the house, but always left the details of how to accomplish it to the plaintiff. For instance, the defendants would tell the plaintiff that they wanted a certain fixture built into a certain spot in the house. The plaintiff would then either perform the task in the manner he deemed best or would inform the defendants that there would be a problem with the placement of the fixture as they wanted it. In the latter cases, the defendants would then tell the plaintiff to do the job in whatever way he could.

While Ray had some experience as a handyman, the plaintiff opined that he was more knowledgeable about the work than either Ray or Fred. Further, though the plaintiff stated that he thought of the defendants as the general contractors, giving orders and supervising the plaintiff's work, when the defendants helped the plaintiff, they acted more as assistants than supervisors. Thus, when the plaintiff and Ray installed a new furnace, the plaintiff actually hooked it up. Ray merely put on some tape, put in screws and handed items to the plaintiff. Similarly, Fred helped plaster the house, but only after the plaintiff told him how to do it. When Ray told the plaintiff he wanted the project completed more quickly, the plaintiff suggested that Ray hire more help. Ray then added Bill Gilbert to the project.

The record also contains the depositions of Fred and Sandy. Those depositions add nothing significant to the defendants' version of the circumstances surrounding his accident.

Based on the parties' depositions, the defendants moved for summary judgment. In support of their motions, the parties contended in part that the depositions, including the plaintiff's, showed that they were not "in charge of" the work as required by the Structural Work Act. The trial court granted the defendants summary judgment on all counts of the plaintiff's suit.

On appeal, the plaintiff presents no argument regarding summary judgment on the negligence counts. Accordingly, pursuant to Supreme Court Rule 341(e)(7) (107 Ill. 2d R. 341(e)(7)), we will not consider that portion of the judgment. The sole issue which the plaintiff argues is whether the trial court erred in granting summary judgment on the counts alleging violation of the Structural Work Act.

■ Section 9 of the Illinois Structural Work Act (the Act) (Ill. Rev. Stat. 1987, ch. 48, par. 69) provides that the Act applies to any "owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure" covered by the Act. The issue of who has charge of the work is generally a fact question for the jury. (*Winger v. Davis* (1980), 85 Ill. App. 3d 912, 407 N.E.2d 696.) However, a trial court may properly grant summary judgment to the defendants, if the pleadings, deposition of the plaintiff, affidavits and counteraffidavits show that no genuine issue was raised as to the material fact that the defendant owners were not in charge of the work during the performance of which the plaintiff was injured. *Di Prima v. Edwards* (1977), 55 Ill. App. 3d 633, 371 N.E.2d 252.

■ Determining whether the defendants were in charge of the work depends upon an evaluation of the totality of the circumstances. (*Ilic v. Henry Crown & Co.* (1981), 97 Ill. App. 3d 231, 422 N.E.2d 892.) Specific factors to examine are whether the defendants: (1) supervised and controlled the work; (2) retained the right to supervise and control the work; (3) constantly participated in the ongoing activities at the construction site; (4) supervised and coordinated the subcontractors; (5) took responsibility for safety precautions at the jobsite; (6) had authority to issue change orders; (7) had the right to stop the work; (8) owned the equipment at the jobsite; (9) were familiar with construction customs and practices; and (10) were in a position to assure worker safety or alleviate equipment deficiencies or improper work habits. (*Johnson v. Commonwealth Edison Co.* (1985), 133 Ill. App. 3d 472, 478 N.E.2d 1057.) Whether the defendants had charge is determined not only from their contractual obligations, but also from the surrounding circumstances and from the role they in

fact assumed. *Winter v. Davis* (1980), 85 Ill. App. 3d 912, 407 N.E.2d 696.

■■ In the instant case, the plaintiff acknowledged that he was more knowledgeable than the defendants about the work he did. When the defendants helped the plaintiff, they acted, in their words, as "gophers." Though the plaintiff did not use the term "gophers," his description of the defendants' work makes it clear that for all practical purposes the plaintiff was directing their activities. Similarly, while the defendants had the legal authority to halt the work at any time and to instruct the plaintiff to redo work or alter his methods, they never exercised this power. In fact, the plaintiff would tell the defendants if their plans were unworkable. He would then suggest alternative plans which, he stated, the defendants would accept. Further, it is clear that the plaintiff was free to come and go as he pleased and that he was trusted to keep track of his own hours. No agreement existed between the parties as to who would provide tools. Finally, there is no evidence that the defendants were familiar with construction customs or practices, or that they had any special knowledge about jobsite safety.

Under these circumstances, we hold that the trial court properly concluded as a matter of law that the defendants were not in charge of the work. Accordingly, the court correctly granted the defendants' motions for summary judgment. As the court stated in *Di Prima v. Edwards* (1977), 55 Ill. App. 3d 633, 371 N.E.2d 252, to impose liability for the plaintiff's injuries under the instant circumstances would be to place an unreasonable burden on all homeowners who contract for improvements on their homes.

The judgment of the circuit court of Will County is affirmed.

Affirmed.

HEIPLE and WOMBACHER, JJ., concur.