WALTON FITZPATRICK, Plaintiff-Appellant, v. PERRY DRUGS COMPANY, Defendant-Appellee (Irving Graifman, Inc., *et al.,* Intervening Petitioners-Appellees).

First District (6th Division) No. 1—90—0370

Opinion filed May 3, 1991.

Frank & Melamed, Ltd., of Chicago (Michael J. Evans, of counsel), for appellant.

Cole, Grasso, Fencl & Skinner, Ltd., of Chicago (Glenn F. Fencl and Joseph F. Spitzzeri, of counsel), for appellee.

JUSTICE EGAN delivered the opinion of the court:

The plaintiff, Walton Fitzpatrick, filed a complaint under the Structural Work Act (Ill. Rev. Stat. 1983, ch. 48, par. 60 *et seq.*) (the Act) for personal injuries against the owner of the work site, the defendant, Perry Drugs Company (Perry). The trial judge granted the defendant's motion for summary judgment on the ground that the record showed, as a matter of law, that the defendant was not in charge of the work as required by section 9 of the Act. Ill. Rev. Stat. 1983, ch. 48, par. 69.

Perry owned a building at 95th and Damen in Chicago that was to be remodeled into one of its retail drugstores. Perry's architects in Detroit prepared the plans for the job. Perry hired Frank Alschuler (Alschuler) to coordinate the work. Alschuler then hired Irving Graifman (Graifman) as a carpentry contractor and to do "some demolition work." The plaintiff was an employee of Graifman.

Alschuler's job was to take bids from subcontractors, issue contracts, pay the contractors, schedule the work and observe the construction progress. However, because Graifman had worked with Perry and Alschuler in the past, no bids other than Graifman's were considered for the carpentry work. Graifman was familiar with the Perry "layout" and knew how to assemble Perry's equipment. Perry preferred to use Graifman for carpentry work. All other contracts were reviewed and signed by Alschuler with one exception. Perry itself signed a contract with one of the subcontractors. When Alschuler signed the contracts, however, it was on behalf of Perry. He testified that he "recommended" acceptance of the contractors to Perry and that Perry never refused to follow his recommendation. When lien waivers were submitted to Alschuler by the subcontractors, he would give them to Perry. Perry had the authority to issue change orders and to stop the work.

James Fowler was an assistant vice-president and the senior project manager for Perry. It was his responsibility to act upon leases, develop budgeting, obtain construction documents through architects and generally oversee development of a store before its opening. Glenn Reimer was the construction coordinator for Perry and Fowler's assistant. Both Fowler and Reimer went to the building on a number of occasions to inspect the work and to assure a timely completion. There was a dispute, however, as to the exact number of times Fowler and Reimer were at the work site. Fowler said Reimer was there on a weekly basis and gave reports on the progress each week. The plaintiff testified that there were people from Perry present every day. Alschuler said he averaged approximately two visits a week. The plaintiff also testified that if his boss was not present and someone from Perry told him what to do, he had to do it.

There were no written safety rules for the job, and safety meetings were not held. Perry provided no equipment to the subcontractors. Fowler testified that any serious safety problems he would have observed would have been discussed with Graifman on the site and reported to Alschuler. On some occasions Fowler or Reimer went directly to Graifman to explain what they wanted.

On December 1, 1983, the plaintiff was standing on a ladder and pulling duct work down from the ceiling. Another worker was helping him by holding the duct work as it was lowered to the floor. That other worker was called away, and he released the duct work which struck the plaintiff, knocking him off the ladder. As a result, the plaintiff fractured his back.

The plaintiff contends that the judge erred in granting summary judgment; he argues that the record does not show, as a matter of law, that the defendant was not in charge of the work. We agree.

 The issue of who has charge of the work is generally a fact question for the jury. (*Winter v. Davis* (1980), 85 Ill. App. 3d 912, 407 N.E.2d 696.) Whether a defendant is in charge of the work depends on a totality of the circumstances. (*Ilic v. Henry Crown & Co.* (1981), 97 Ill. App. 3d 231, 422 N.E.2d 892.) Mere ownership of property does not trigger liability. (*Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1979), 76 Ill. 2d 481, 394 N.E.2d 403.) On the other hand, an owner who retains control cannot insulate himself from liability simply by retaining a general contractor. (*Lyle v. Sester* (1981), 103 Ill. App. 3d 208, 430 N.E.2d 699.) One or more parties may be in charge of the work and be subject to liability under the Act for the same injury. (*Emberton v. State Farm Mutual Automobile Insurance Co.* (1978), 71 Ill. 2d 111, 373 N.E.2d 1348.) Whether an owner had charge is determined not only from his contractual obligations, but also from the surrounding circumstances and from the role the owner, in fact, assumed. *Winter v. Davis* (1980), 85 Ill. App. 3d 912, 407 N.E.2d 696.

 The factors to consider whether an owner of property is in charge include, but are not limited to, whether the owner: (1) supervised and controlled the work; (2) retained the right to supervise and control the work; (3) constantly participated in the ongoing activities at the construction site; (4) supervised and coordinated the subcontractors; (5) took responsibility for safety precautions at the jobsite; (6) had authority to issue change orders; (7) had the right to stop the work; (8) owned the equipment at the work site; (9) was familiar with construction customs and practices; and (10) was in a position to insure worker safety or alleviate equipment deficiencies or improper work habits. *Egizio v. Majetich* (1988), 172 Ill. App. 3d 758, 527 N.E.2d 13.

The defendant has cited five cases in support of its position, and we will discuss them in order. The first two are *Egizio v. Majetich* (1988), 172 Ill. App. 3d 758, 527 N.E.2d 13, and *Lyle v. Sester* (1981), 103 Ill. App. 3d 208, 430 N.E.2d 699. Neither of those cases is persuasive. Both cases involved home owner defendants. In *Lyle*, the court emphasized the contrast between the lack of knowledge concerning the construction work and the knowledge of the plaintiff. The court said that the defendant, "due to his lack of expertise or extensive experience in construction matters, was not in a position to assure worker safety or prevent or alleviate either equipment deficien-

cies or improper work habits." (103 Ill. App. 3d at 219.) The court concluded that to impose liability on the defendant under the circumstances would be to place an unreasonable burden on all home owners who contract for improvements on their homes. (103 Ill. App. 3d at 219.) In *Egizio*, the plaintiff acknowledged that he was more knowledgeable than the defendant homeowner. The defendant actually did work at the direction of the plaintiff. The court emphasized that "there is no evidence that the defendants were familiar with construction customs or practices, or that they had any special knowledge about jobsite safety." (172 Ill. App. 3d at 762.) Unlike *Lyle* and *Egizio*, the defendant's employees in this case were familiar with construction customs and practices and, it is fairly inferable, had special knowledge about jobsite safety.

The next two cases cited by the defendant *upheld* findings that the defendants were in charge of the work: *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 473 N.E.2d 946, and *Johnson v. Commonwealth Edison Co.* (1985), 133 Ill. App. 3d 472, 478 N.E.2d 1057. The defendant compares the facts of those cases with the facts of this case and argues that the facts of this case are much weaker than the facts of those cases. We are not convinced that the facts of this case are weaker than those of *Simmons*, but, even if they were, any factual disparity between those cases and this case would be irrelevant. The issue in this case is not whether the plaintiff could have had a stronger case; the issue is whether it was strong enough.

The last case cited by the defendant is *Marine Bank v. Archer Daniels Midland* (1987), 156 Ill. App. 3d 576, 509 N.E.2d 163, which did involve a corporate landowner. The appellate court affirmed summary judgment for the owner on three separate grounds, one of which was the failure of the plaintiff to raise a fact question of whether the owner was in charge of the work. There are three distinctions between the facts of *Marine Bank* and the facts of this case. In *Marine Bank*, the owner's right to stop the work was limited; it could order work on one project to stop so that work on another could begin. In addition, there was no right to issue change orders. The defendant's plant engineer testified that if he desired changes in the work to be made, he informed the plaintiff's employer of the fact "because he did not have authority to direct [the plaintiff or his co-employees]." (156 Ill. App. 3d at 579.) Most important, there was no evidence of the owner's "familiarity with the construction customs and practices." 156 Ill. App. 3d at 579.

The plaintiff has cited two supreme court cases we judge to be strong authority for his position. In *Norton v. Wilbur Waggoner*

*Equipment Rental & Excavating Co.* (1979), 76 Ill. 2d 481, 394 N.E.2d 403, the defendant school district hired a "Clerk of the Works for the construction" involved. His duties were to record the progress of the construction, inspect the construction, serve as liaison between the architect and general contractor, and take "a head count" of the workers. He was expected "to keep the contractor honest" by making certain all specifications were met. He had an office at the site but no staff; he was there five days a week but not for the whole day, and had weekly meetings with the architect, contractor and subcontractors but safety was never discussed. He was an experienced contractor himself and was familiar with the bar joists at the site and had been on the bar joist on which the plaintiff was injured. No safety superintendent was appointed, and no safety meetings or discussions were ever held. Any changes the clerk felt necessary had to be reported to the architect in order to effect them. The school board could terminate its contract with the contractor although it had to provide 10 days' notice to the contractor.

The supreme court rejected the school board's claim that the evidence did not support a finding that the board was in charge of the work. The court pointed out that the board could terminate the contract, even subject to a 10-day notice limitation and could order changes, and that the clerk was generally familiar with construction methods.

In *Emberton v. State Farm Mutual Automobile Insurance Co.* (1978), 71 Ill. 2d 111, 373 N.E.2d 1348, the defendant owner maintained a building design and construction department which was responsible for the design and construction of all company-owned buildings throughout the United States and Canada. It did preliminary layout work for the construction of the building in question. A contract was entered into with an architect and a general contractor. All subcontracts were handled by the general contractor. Inspections were made by various employees of the owner. The owner's assistant vice-president for building design and construction went to the site approximately twice a week and remained there for periods of time which "varied from an hour to all day." A number of change orders were issued at the direction of the owner. At various times the owner directed the architect to issue a stop-work order. The appellate court reversed a judgment for the plaintiff, and the supreme court reversed the appellate court, holding that the evidence was sufficient to establish that the owner was in charge of the work.

■ The same three principal factors present in *Norton* and *Emberton* are present here: the power to stop the work, the power to

make change orders, and the presence on the jobsite of an employee of the owner who was experienced in building construction. In oral argument, the defendant's attorney said that the sole issue was whether the defendant was in a position to assure worker safety or alleviate equipment deficiencies or improper work habits. We agree, and we conclude that a factual question exists as to whether Perry was in a position to assure worker safety or alleviate equipment deficiencies or improper work habits. That being so, we judge that summary judgment was improperly granted.

Although not necessary to our decision and although the plaintiff has not expressly argued the point, we observe that the record establishes some doubt that Alschuler was an independent contractor. He "recommended" which subcontractor should be hired, and whatever contracts he signed, he did so on behalf of Perry.

For these reasons, the judgment of the circuit court is reversed and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed and remanded.

McNAMARA and LaPORTA, JJ., concur.