SAMSON BROWN, Plaintiff-Appellant, v. UNICHEMA CHEMICALS, INC., *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—93—3158

Opinion filed December 2, 1994.

O'Brien & Associates, of Chicago (Timothy M. O'Brien, of counsel), for appellant.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, David R. Ganfield II, and Edward M. Kay, of counsel), for appellees.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

Plaintiff Samson Brown (Brown) filed suit against defendants Unichema Chemical, Inc., Unichema International, Inc., and Unichema North America, Inc. (for brevity's sake we will refer to all three defendants as Unichema), for personal injuries he sustained as

a result of a fall from a ladder. Count I alleged violations of the Structural Work Act (Act) (740 ILCS 150/1 *et seq.* (West 1992)). Count II alleged negligence. Plaintiff appeals the grant of summary judgment on both counts as well as the denial of a motion to reconsider the entry of summary judgment on the Structural Work Act count.

Brown's complaint alleges that he was a 31-year-old commercial window cleaner and that on April 8, 1988, he fell from a wooden ladder while working at the Unichema premises at 4650 South Racine Avenue in Chicago. Brown suffered multiple fractures in both legs. Brown was employed by ABC Window Cleaning Company (ABC). ABC had a contract with Unichema to wash windows inside and outside at the Unichema complex. ABC washed Unichema's windows approximately every 60 days. The exact date was not predetermined. Brown received daily job assignments which consisted of a slip of paper with the company name, the job location and a place for the customer to sign after the work was completed. Brown had to present the job tickets to the Unichema security guard to get into the premises and then to a Unichema maintenance man when he got to the building.

On September 7, 1985, Unichema issued a purchase order to ABC to clean the windows at its administration building every month. The purchase order did not require compliance with any other contract, safety standards or policy issued by Unichema. Unichema issued safety standards on May 20, 1986, which were in effect until May 1991.

Unichema filed a motion for summary judgment on both counts. Unichema's motion for summary judgment was supported by the complaint; its answers; and the depositions of Brown, Angie Butler (president of ABC) and Joel Spiegel (vice-president—commercial, of Unichema).

Angie Butler testified that ABC had been involved in washing windows at the Unichema complex for as long as she could remember, which was 40 years. Butler made the decision when to send an employee out to Unichema to wash windows. Her window washers used wooden ladders as long as she could remember. She did not know of a time when the wooden ladder was tied off or secured in any manner against the building at Unichema. Butler had no evidence that plaintiff's work was ever monitored, inspected or coordinated by Unichema on the day of the accident.

Plaintiff filed a response and a number of exhibits. Among the exhibits filed were the following: a photograph of the east wall of the Unichema main office building; photographs of ABC's wooden ladders;

Unichema Chemicals' "Safety Standards, Instructions for Outside Contractors" dated May 20, 1986; Unichema North America, Inc.'s "Safety Standards, Instructions for Outside Contractors" dated July 8, 1989; Unichema's purchase order dated September 7, 1985; 33 ABC Window Cleaning "job tickets"; Unichema safety orientation sheet to all contractors; Unichema facility safety rules; Unichema codes of conduct; Swift employee safety handbook; Unichema general conditions, May 19, 1991; the depositions of Lance Chambers (Unichema personnel manager) and James Channel (Unichema purchasing manager); and an excerpt of the deposition of Pat Clair (a secretary who saw plaintiff on site before his fall).

The Unichema safety standards dated May 1986 provided, *inter alia*: Upon receiving a contract or purchase order covering the performance of work on company premises, the contractor shall designate one individual to act as a liaison with the company. Unichema was also to designate an employee to act as a liaison with the contractor. Contractors were required to report to and clock in at the plant watch office. All equipment used on the jobsite and by the contractor was required to be in compliance with the law. Section 1.2 stated:

> "The following instructions include minimum requirements only, and the omission of any specific provisions shall in no way relieve the Contractor of this normal responsibility for the safe conduct of the work of his employees."

On April 6, 1993, the trial court entered summary judgment in favor of defendants on the Structural Work Act count. Thereafter, plaintiff filed a motion to reconsider that order, and, by leave of court, an additional response opposing the defendants' motion on the negligence count. Both the motion to reconsider and the additional response were supported by the affidavit of Professor Ralph L. Barnett, a professor of mechanical and aerospace engineering at the Illinois Institute of Technology, and by all the previously filed exhibits. Plaintiff also filed the transcript of proceedings from April 6 in support of the motion to reconsider. Professor Barnett's affidavit stated that he had been qualified by the circuit court of Cook County and other parts of Illinois as an expert witness in connection with workplace safety issues and in particular on issues pertaining to the safe, suitable and proper uses of ladders. He had received, reviewed and was familiar with the exhibits involved in the summary judgment motion. In Professor Barnett's opinion, based upon the materials reviewed and based upon his knowledge, training and experience, Unichema was in complete and total control of the premises and all the buildings located there, on and before April 18, 1988. This

opinion was based on the following facts in the record: (1) the physical environment at Unichema represented a deliberate effort by Unichema to control its premises and to control and supervise those who came to the premises; (2) testimony of Joel Speigel, vice-president, (3) testimony of Lance Chambers, personnel manager; (4) testimony of James Channell, purchasing manager; (5) testimony of Samson Brown; and (6) the plain language of the Unichema safety standards. Professor Barnett opined Unichema was in complete control and had the authority and right to control, supervise and even stop the work done by Brown. Professor Barnett further stated that, in his opinion, Unichema had total and complete authority to stop the work being done by plaintiff with the ladder being used on April 18, 1988, at the Unichema premises. Based upon the facts of this case, he felt Unichema was acting as both owner and general contractor as to the work of ABC and that the evidence suggested that no one undertook the liaison role between Unichema and ABC in violation of sections 1.1 and 1.4 of Unichema and that the evidence indicated that Unichema made no effort to assure that its "subcontractor," ABC, followed the admonitions of section 1.2 of its safety standards, which required the subcontractor to meet the standards of Unichema and the subcontractor's responsibility to provide a safe workplace for its employees. Specifically, Unichema failed to provide the liaison and minimum supervision to assure that section 3.1.8 of Unichema's safety standards was met. Further, Unichema did not assure that ABC complied with section 3.1.10 of the safety standards which require Unichema to assure itself that ABC instructs its employees to comply with Unichema's rules and regulations with respect to safe work practices and good working habits.

Professor Barnett further stated that it appeared the subject ladder was too narrow at the top and did not develop sufficient friction as it contacted the smooth glazed brick to stabilize the upper portions of the ladder, the base section of the ladder was not wide enough to overcome the stability shortcomings at the top of the ladder, and no tie-off procedure was utilized at the top of the ladder to circumvent the foregoing shortcomings. Professor Barnett opined Unichema was negligent toward Brown in one or more of the following ways: (1) Unichema failed to shut down the job or see to it that the top of the ladder was secured before plaintiff performed his work; (2) Unichema failed to shut down the job or see to it that plaintiff had a safe, suitable and proper ladder to use to do his work; (3) Unichema failed to shut down the job or see to it that a safe, elevated work surface was provided for the use of plaintiff; (4) Unichema failed to stop the work of the plaintiff when it knew or

should have known that the use of the ladder in question on the building in question was particularly hazardous; (5) Unichema failed to stop the work of the plaintiff when it knew or should have known that the face brick on the building was slick and that such a condition was dangerous for persons using a wooden ladder; (6) Unichema failed to enforce its own safety rules regarding the safe use of ladders at its site; (7) Unichema failed to enforce its own safety rules regarding the safe use of ladders at its site; and (8) Unichema failed to appoint a safety liaison as required by it own safety rules for the work of the plaintiff. Professor Barnett opined that the negligence of Unichema was a proximate cause of the fall and injury of Brown on April 8, 1988.

On August 20, 1993, the trial court held a hearing on the defendants' motion for summary judgment on the negligence count. In ruling on a defense motion to strike the affidavit of Professor Barnett, the court stated that the motion actually addressed it more in light of a motion for reconsideration but that the trial court did not see a problem in considering the affidavit with regard to the motion to reconsider and did not think there was a basis to necessarily strike it. The court granted summary judgment in favor of defendants on the negligence count and Brown's motion to reconsider was denied. Brown appeals from the trial court's orders of April 6, 1993, and August 20, 1993.

Brown presents three issues for review: (1) whether the trial court erred in allowing summary judgment on the Structural Work Act count; (2) whether the trial court erred in allowing summary judgment on the negligence count; and (3) whether the trial court erred in denying Brown's motion to reconsider the order of April 6, 1993.

I

Count I alleged that Unichema "owned and operated, leased or controlled a business and building at 4650 S. Racine Avenue, Chicago, Illinois; were in charge through their employees of all building maintenance, repairs, window washing and window cleaning at the site; were present through their employees and agents at the site and around the locations where Brown was working on the site; participated in coordinating the work, scheduling the work, designating work methods, inspecting the work, checking and monitoring work progress, and had authority to stop, refuse and change the work." Count I further alleged that the Unichema defendants allowed or caused a certain ladder to be placed, erected, operated and used by Brown; that Brown's job duties required that he use the ladder; that

the Unichema defendants wilfully failed to place, erect or operate the ladder in a safe, suitable and proper manner as required by the Illinois Structural Work Act; that Brown was caused to fall from the ladder; and that as a proximate result of the defendants' violation of the Structural Work Act, Brown sustained severe leg bone fractures in both legs.

Brown maintains that the exhibits filed in defense of summary judgment present factual issues as to whether Unichema had charge of the work.

At the hearing on April 6, 1993, the trial court stated the following. She believed the crux of the plaintiff's position was that the record contained enough factual material to find a material question of fact with regard to defendants having some control over the window washing activity. The court believed plaintiff maintained this argument by virtue of the fact that there were safety standards published by defendants which the plaintiff sought to have the court apply or construe to apply to the standing order for window washing as well as plaintiff's knowledge or contact with people on the defendants' premises that would give rise to some type of inference that defendants had the ability to control the work, thereby potentially reaching the question of whether or not defendants were in charge of the work. The court concluded that, basically, plaintiff's position was that defendants were in total control of each and every contractor coming on the jobsite and in total control of ABC and of the plaintiff and each and every detail of the plaintiff's work.

The trial court found: (1) the safety standards were published six months after the contract was entered into with ABC; (2) no evidence was present in the record that ABC was made aware of the standing order; (3) no one at Unichema was told when during each 60-day period these window washers were coming, it was solely at the discretion and scheduling of the ABC window office and so conceivably Unichema had no actual knowledge that plaintiff or anybody from ABC was even on its premises at any given time; (4) no evidence was in the record that any safety liaison person who was the subject matter of these rules and regulations had any involvement with the plaintiff on the date in question; (5) the court believed there was some question about the plaintiff checking in with a maintenance man on the particular day he arrived; (6) nothing in the depositions revealed anyone at Unichema who had any substantial knowledge of the methodology or the practices regarding window washing; and (7) no factual basis for the position that defendants had a right to stop the work other than perhaps by cancelling the contract itself or cancelling the standing order.

The trial court stated that while the plaintiff might have some truth regarding the safety rules in effect, she did not see how they would apply to this situation.

> "I don't think there is any other picture that anyone can get from this plaintiff company that's sitting out there and comes on to the premises once every 60 days and no one knows he's there and they just do their job and the invoices for the one every 60 days are paid and other than that nobody has anything to do with ABC or any people who work for them."

The court further stated:

> "I realize that plaintiff would like to argue that there are very specific rules and regulations about independent contractors and contractors that come out to their property to do work. And there are safety procedures and rules that have to apply. But I don't think that these were. I mean certainly when I read the regulations they clearly pertain to people who are doing much more sophisticated things or specified things with regard to mechanical equipment and fire protection issues."

A motion for summary judgment should only be granted where the pleadings, depositions, and admissions on file, together with the affidavits, if any, disclose that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. (735 ILCS 5/2—1005 (West 1992); *Sons v. Taylor* (1991), 219 Ill. App. 3d 923, 925.) The court must construe the pleadings, depositions and affidavits most strictly against the movant and liberally in favor of the nonmovant. (*Stringer v. Zacheis* (1982), 105 Ill. App. 3d 521, 522.) Although the plaintiff does not have to try his case, he must provide a factual basis which would arguably entitle him to judgment. (*Handy v. Sears, Roebuck & Co.* (1989), 182 Ill. App. 3d 969, 972.) The purpose of summary judgment is not to try an issue of fact, but rather to determine whether a triable issue of fact exists. *Sloan v. Jasper County Community Unit School District No. 1* (1988), 167 Ill. App. 3d 867, 870.

The use of summary judgment is encouraged under Illinois law as an aid to the expeditious disposition of a lawsuit. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) However, it is a drastic means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt. *Sons*, 219 Ill. App. 3d at 925.

To sustain a cause of action for violation of the Act, plaintiff must establish the following elements: (1) he was involved in a construction activity protected under the Act; (2) the activity took place on a structure covered by the Act; (3) a scaffold or similar device defined by the Act was being used; (4) the device was unsafe or not safely placed or located; (5) the unsafe condition proximately

caused plaintiff's injury; (6) defendant had charge of the work; and (7) defendant wilfully violated the Act. (*Tracy v. Montgomery Ward & Co.* (1990), 193 Ill. App. 3d 304, 307-08.) A "wilful" violation of the Structural Work Act occurs only when the evidence shows that defendant knows or, in exercise of reasonable care, should know that a dangerous condition exists. (*Cockrum v. Kajima International, Inc.* (1993), 243 Ill. App. 3d 402, 415.) The Structural Work Act does not impose absolute liability on all contractors, subcontractors, and other persons involved in the project on which a plaintiff is injured. *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 318-19.

Brown raised the issue of "having charge of the work," claiming the facts demonstrate that Unichema was "in charge" within the meaning of the Act. In support of his position, plaintiff cites to a line of cases beginning with *Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316.

The Illinois Supreme Court has treated the issue of whether defendant was "in charge" of the injured plaintiff's work as a question of fact. (*Cutuk v. Hayes/Gallardo, Inc.* (1992), 151 Ill. 2d 314, 321.) Factors to consider when deciding whether a party is "in charge" of claimant's work include: supervision and control of the work; retention of a right to supervise and control work; constant participation in ongoing activities at the construction site; supervision and coordination of the subcontractor; responsibility for taking safety precautions at the jobsite; authority to issue a change order; right to stop work; ownership of equipment used on the jobsite; familiarity with construction customs and practices; and whether the party was in a position to assure worker safety. *Jackson v. Back of the Yards Neighborhood Council* (1992), 240 Ill. App. 3d 128, 134-35.

In *Cockrum v. Kajima International, Inc.* (1993), 243 Ill. App. 3d 402, the court held that the question of whether defendant was "in charge" of the plaintiff's work as a window washer was properly left to the jury. The court so held, despite defendant's contentions that the plaintiff was injured on a nonscheduled workday, the defendant was not informed the plaintiff would be working on a nonscheduled workday, he fell from his own ladder, and the plaintiff's employer determined what equipment and method would be used to clean the windows, required all persons entering the worksite to report who they worked for and from what company their employer had subcontracted the work they were performing, since the record showed that the defendant retained the authority to stop any contractor's or subcontractor's work which was being performed in an unsafe manner, the defendant's manager testified that he would

have stopped the plaintiff if he had been aware the windows were being washed with a portable ladder, and the security firm hired by the defendant required all persons entering the worksite to report who they worked for and from what company their employer had subcontracted the work they were performing.

In *Fitzpatrick v. Perry Drugs Co.* (1991), 213 Ill. App. 3d 529, the court found three principal factors present: the power to stop the work, the power to make change orders and the presence on the job-site of an employee of the owner who was experienced in building construction. During oral argument, defendant's counsel indicated that the sole issue was whether the defendant was in a position to assure worker safety or alleviate equipment deficiencies or improper work habits. The court agreed and concluded that a factual question existed as to whether defendant was in a position to assure worker safety or alleviate equipment deficiencies or improper work habits. *Fitzpatrick*, 213 Ill. App. 3d at 534-35.

■ In this case, the trial court decided that since Unichema's safety standards were published six months after the contract was entered into with ABC they did not apply to this situation. We believe that the issue of whether or not Unichema's safety standards applied to ABC and the accident at issue is a question of fact which could ultimately have a bearing on the issue of whether Unichema was in charge of the work. If Unichema's safety standards would be found to apply to ABC, a trier of fact could also conclude that Unichema knew or, in the exercise of reasonable care, should have known about how the ladder was being used and that an employee of ABC might be present on the day in question. Defendants have not established a clear legal right to summary judgment. We find that questions of material fact exist about whether Unichema was "in charge" of the work being performed when Brown was injured. Therefore, we find that the trial court erred in the entry of summary judgment in favor of the defendants.

Our determination that the trial court erred in granting summary judgment on the Structural Work Act count makes the issue of whether the trial court erred in denying the motion for reconsideration moot, and as such we need not address it.

## II

Count II of the complaint alleged defendants were negligent in that they "failed to provide the plaintiff with a proper scaffold or support; failed to warn the plaintiff of the hazards and risks of using a ladder at the site; failed to provide a sound, level and safe foundation" for plaintiff's use in doing the window washing.

■ In ruling, the trial judge stated she didn't see any of the classical elements attaching to landowner liability: "I don't have any evidence showing anything other than the minute this man puts his ladder up he was immediately aware of the open and obvious condition of no hooks in the mortar of the building on which to attach his ladder." The trial court granted summary judgment "because nobody had a duty to protect against a condition that is open and obvious." In *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 155-56, the Illinois Supreme Court held that whether an "open and obvious" condition itself served as adequate notice of its presence or whether additional precautions were required to satisfy the defendant's duty of reasonable care were questions properly left to the trier of fact. We find sufficient issues of material fact precluding the entry of summary judgment on this count.

Accordingly, for all the reasons set forth above, we reverse the decision of the trial court granting summary judgment in favor of the defendants and remand the matter for further proceedings.

Reversed and remanded.

COUSINS and McNULTY, JJ., concur.